UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


COREY HENSINGER,

    Plaintiff,

v.                                                      Case No. 1:23-cv-537
                                                          Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB).

In November 2016, plaintiff applied for DIB alleging a disability onset date of April 30, 2014. PageID.418. Plaintiff identified the following disabling conditions: depression; anxiety; sleep apnea; "right ankle;" and arthritis. PageID.452. Prior to applying for benefits, plaintiff completed two years of college and had past relevant work as a construction manager and small business owner. PageID.453, 2174. The present appeal involves an opinion from administrative law judge (ALJ) Stephanie Katich, who reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 31, 2023. PageID.2159-2175.[1] This decision, which was

---

[1] Defendant points out that "[p]laintiff's claim has a long procedural history, including two previous ALJ decisions, and ultimately an appeal to the Northern District of Indiana[] (PageID.195, 2220, 2276)" and that "[i]n March 2022, a magistrate judge remanded the case for an ALJ to re-evaluate the claimant's ankle impairment and the opinion evidence. (PageID.2263)." Defendant's Brief (ECF No. 13, PagID.4701).

later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant

3

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.     ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. Plaintiff's DIB claim involves a closed period from April 30, 2014 through December 31, 2016, the date that plaintiff last met the insured requirements of the Social Security Act. PageID.2162. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful employment since his alleged onset date of April 30, 2014. *Id*.

At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of: status post right shoulder degenerative changes; status post repair of right ankle ligaments with medial malleolar osteotomy and cartilage graft (January 2014, March 2015, and May 2015); right ankle mild tenosynovitis/tendinosis/osteoarthritis; and obesity. *Id*. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.2167.

The ALJ decided at the fourth step that,

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), i.e., lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, sit for at least 6 hours in an 8 hour workday, and stand and/or walk no more than 2 hours in an 8 hour workday, except that the claimant can occasionally climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, he can occasionally reach overhead with the right non-dominant upper extremity, he can occasionally balance, stoop, crouch and crawl, he can never kneel, he should avoid all exposure to wet, slippery or uneven surfaces and terrain, he can never use or operate foot controls with the right lower extremity, and he occasionally uses a cane in one upper extremity during ambulation.

PageID.2168.  At this step, the ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work.  PageID.2174.

At step five, the ALJ determined that plaintiff could perform other, unskilled jobs existing in the national economy at the sedentary work exertional level.  PageID.2174-2175.  Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as document preparer (17,000 jobs), sorter of small products (9,000 jobs), and telephone quotation clerk (250,000 jobs).  PageID.2175.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 30, 2014 (the alleged onset date) through December 31, 2016 (the date last insured).  *Id*.

### III. DISCUSSION

Plaintiff raises three errors on appeal.  The alleged errors relate to the ALJ's residual functional capacity (RFC) assessment.  RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  *See* 20 C.F.R. § 404.1545.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  In evaluating an individual's RFC, the ALJ considers impairments that are both "severe" and "not severe", *see* 20 C.F.R. § 404.1545, "based on all the relevant medical and other evidence in [the claimant's] case record," 20 C.F.R. § 404.1520(e).

### A. Whether the ALJ erred by playing doctor when reviewing the evidence and discounting treating physician opinions?

Because plaintiff filed this claim before March 27, 2017, the "treating physician" rule applies.  A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "In

5

general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff contends that the ALJ's decision is not based on substantial evidence because the ALJ substituted her medical opinions for that of a treating physician. *See Simpson v. Commissioner of Social Security*, 344 Fed. Appx. 181, 194 (6th Cir. 2008) ("Although the ALJ is charged with assessing credibility and weighing medical opinions against other evidence in the record, the ALJ should avoid the temptation to substitute his own medical judgment for that of medical professionals."); *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006) ("ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.").

The ALJ developed plaintiff's RFC after performing a comprehensive review of the medical records generated during the relevant time period of April 30, 2014 through December 31, 2016. PageID.2168-2174. Plaintiff contends that the ALJ improperly substituted her medical judgment regarding his right ankle limitations when she stated that,

6

> "If the claimant was as limited in his mobility as he suggested, one would expect some weakening and atrophy in the right ankle from lack of use; yet that is not the case here." (Page ID. at 2109).

Plaintiff's Brief (ECF No. 12, PageID.4683).[2]

Plaintiff points out one sentence in a lengthy discussion of the evidence during the relevant time period, which reads as follows:

> The record further reflects that from 2014 through 2016, the claimant's physical examination findings do not demonstrate significant deficits in function consistently. The claimant was noted to have decreased range of motion in his right ankle and right shoulder, a body mass index as high as about 30, clicking in his right ankle, guarding of his right ankle, an antalgic/abnormal gait, and tenderness over his right ankle and right shoulder. However, the claimant's muscle strength was almost always graded at no worse than "4" out of "5" in his right ankle from 2014 through 2016, and the record contains no evidence that he had reflex or sensory deficits, any significant atrophy, or any significant deficits in grip strength or fine finger manipulative ability from 2014 through 2016 (Exs. 1F; 3F-7F; 9F). <u>If the claimant was as limited in his mobility as he suggested, one would expect some weakening and atrophy in the right ankle from lack of use; yet that is not the case here</u>. In fact, he was observed to consistently ambulate in Exhibit 5F with a normal gait without an assistive device through May 2016 (Ex. 5F/28, 53, 56). Despite the District Court's objection to using clinical findings to dispute the claimant's allegations, it is hard to ignore that some of the objective findings pertaining to the claimant's right ankle are inconsistent with the severity of his subjective complaints. Contrary to the claimant's testimony, the evidence does not show any significant worsening of the right lower extremity until after the date last insured (Ex. 10F). Other evidence in the file (i.e., Exs. 11F-15F) contain medical records for the claimant well after the date last insured. Therefore, these records are of little probative value for the period at issue in this decision.
>
> Moreover, the claimant reported right ankle pain ever since getting back from vacation in September 2015, which suggests that he was not having ankle pain, at least to the degree alleged, prior to his vacation and is consistent with PT records indicating the same. The claimant underwent PT for his right ankle through May 2016 and did well with this (Ex. 5F/28). In addition, he was observed to consistently ambulate with a normal gait without an assistive device through May 2016 (Ex. 5F/28, 53, 56) and he went to Florida in March 2016 (Ex. 5F/41). There was also mention of him golfing two weeks ago in September 2015 and that he had no pain while golfing, but he did experience gradual irritation on the lateral right ankle (Ex. 5F/59). There was also mention of his standing and washing a camper in July 2015 (Ex. 5F/79). Hence, the undersigned in arriving at the above residual

---

[2] Plaintiff's brief contains incorrect citations to the record, failing to utilize the "PageID." format as directed by the Court, and using incurred "PageID." numbers. The Court will address the citations as necessary.

> functional capacity did not rely only on the objective clinical findings mentioned by the District Court, but also reviewed the entire record that included the claimant's own statements about his physically demanding activities, indicating that his right ankle and right shoulder were more functional during the period at issue than alleged. The undersigned is aware that the claimant received a VA disability rating of 100% for his right ankle as of July 2014 (Ex. 6/12). However, the VA uses a different rating system and criteria than the Social Security Administration. In addition to the above factors, the record reflects that the claimant worked at substantial gainful activity levels for numerous years (Ex. 5D) at jobs requiring more than sedentary exertion despite having right ankle problems since the early 1990s (Ex. 6F).

PageID.2171-2172 (emphasis added). Based on this record, the ALJ's evaluation of the limitations of plaintiff's right ankle are supported by substantial evidence.

Plaintiff also appears to contend that the ALJ "played doctor" in reviewing the opinions of Dr. Norton (podiatrist), Dr. Hammersley (podiatrist), Dr. Wooten (rheumatologist), and Dr. Becker (podiatrist):

> Given all of the above, the undersigned finds it reasonable to conclude that, from 2014 through 2016, the claimant had the above residual functional capacity. This is generally consistent with or more restrictive than most of the medical opinions of record, including the opinion of a State Agency physician at the initial level that the claimant was able to perform the full range of medium work (Ex. 1A), the opinion of a State Agency physician at the reconsideration level that the claimant was able to perform light work with occasional postural maneuvers (such as climbing, balancing, stooping, kneeling, crouching, and crawling) (Ex. 3A), the opinion of Dr. Norton (a former podiatrist) that he could perform seated work (Ex. 9F), the opinion of Dr. Hammersley (a former podiatrist) that he could perform seated work and not lift over 15 pounds (Ex. 3F), and the July 2014 opinion of Dr. Echevarria [a physiatrist] that the claimant was not able to run or ambulate long distances even with an assistive device and that he would have difficulty with stairs, inclined planes, and motor vehicles (Ex. 6F/11). Those opinions limiting the clamant to "seated" or sedentary work are supported by and consistent with the evidence of record through December 31, 2016, including the claimant's somewhat full activities on and before the date last insured, his more physically demanding activities of traveling, golfing, and washing a camper, and objective evidence showing lack of muscle atrophy, lack of muscle strength deficits, and only occasional use of an assistive device for ambulation. However, the undersigned also took into account the evidence of right ankle and right shoulder pain, decreased right ankle and right shoulder ROM, right ankle clicking, right ankle guarding, an antalgic/abnormal gait, and right ankle and right shoulder tenderness in arriving at the above residual functional capacity that reduced the claimant to sedentary,

8

allowed for use of a cane on an occasional basis, limited climbing of ramps and stairs to occasional, precluded all climbing of ladders, ropes, or scaffolds, limited overhead reach with the right upper extremity to occasional, limited balancing, stooping, crouching and crawling to occasional, precluded all kneeling, provided for a work environment free from wet, slippery, or uneven surfaces and terrain, and precluded all use of foot controls with the right lower extremity.

Although Dr. Norton also stated the claimant could only drive 1 hour per day (Ex. 9F) and Dr. Hammersley stated that he could not do any climbing, squatting, standing, or walking at all (Ex. 3F), little weight is given to these limitations since they are not supported by or consistent with the claimant's own reported abilities, his somewhat full activities of daily living, and the documented findings regarding his lack of muscle atrophy, lack of deficits in muscle strength, lack of reflex and sensory deficits, and documented use of an assistive device for ambulation on an occasional basis during the period at issue in this decision. As for Dr. Wooten, he opined in March 2016 that the claimant would have problems with lifting and carrying; but at no point did he specifically opine that the claimant would be unable to lift and carry 10 pounds occasionally and less than 10 pounds frequently (Exs. 1F/32; 7F/8).

Finally, partial weight was given to the March 2017 opinion of Dr. Becker (Ex. 10F). About three months after the date last insured in December 2016, Dr. Becker indicated that when "flare ups" occurred, the claimant was unable to walk or move for hours, which the claimant did not mention in his testimony. He further stated that range of motion was limited, driving, walking and small tasks became large tasks, the time to complete tasks had increased, and the claimant could not perform simple tasks, i.e., mowing. He also noted pain, weakness, inability to walk or stand for short or prolonged activities, unsteady gait, muscle strength 3/5, muscle atrophy at the calf, an inability to squat, kneel, stand on tiptoes, carry heavy weight greater than 10 pounds, and constant use of cane/brace. These same findings were not consistently documented on exams during the relevant time period (Exs. 6F; 7F). In contrast to Dr. Becker's findings in March 2017, the claimant did not exhibit any muscle atrophy or significant and long-standing muscle strength deficits through December 31, 2016. However, great weight is given to that part of Dr. Becker's opinion that the claimant was not able to carry more than 10 pounds, suggestive of a sedentary exertional limitation. While it appears that his right lower extremity problems did worsen, this does not appear to have occurred until early to mid-2017, which is after the date last insured. Moreover, the form that contains this opinion appears to be a VA disability form prepared for the purpose of evaluating VA disability benefits, which program uses different criteria and factors for determining disability.

PageID.2172-2173.[3]

---

[3] The Court notes that Plaintiff's Brief (ECF No. 12, PageID.4686-4692) cited the ALJ's decision as at PageID.2111.

Based on this record, the ALJ gave good reasons for the weight assigned to the opinions of the treating physicians (Drs. Norton, Hammersley, Wooten and Becker). "It is the Commissioner's function to resolve conflicts in the medical evidence." *Craft v. Commissioner of Social Security*, 39 Fed. Appx. 274, 276 (6th Cir. 2002). Accordingly, "[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Commissioner of Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). For these reasons, this claim of error is denied.

**B.  Whether the ALJ erred by failing to account for the Claimant's supported need to elevate his leg?**

At the administrative hearing, plaintiff testified that during the relevant time period, he was elevating his ankle most of the day, *i.e.*, "[p]robably 90 percent of the time I was sitting in a recliner with a pillow under ankle." PageID.2194. When asked, "[d]id your doctors know that you were elevating your leg?", plaintiff responded, "[y]es, and they actually recommended it also." *Id*. When asked, "[d]id they say how high to elevate it or any instruction in that regard?", plaintiff responded.

> They told me just to get to where I was comfortable. They said – when I first started, they said to try and, you know, get it above my heart and see if that helped. But, you know, for me to find where that angle was myself.

*Id*.

Plaintiff contends that his constant need to elevate his right ankle precluded any employment during the relevant time period. This contention is based on the Vocational Expert's (VE's) testimony in response to the third hypothetical question. The operative portion of that question involved a limitation "that this hypothetical individual needs to elevate his right lower extremity to chest level multiple times per day." PageID.2211. In responding to the question, the

10

VE found that the hypothetical person could not perform any work in the national economy because "the degree of the leg elevation, that would not be compatible to any competitive working environment." *Id*.

   The ALJ rejected plaintiff's testimony regarding the constant need to elevate his right ankle during the relevant time period:

> Prior to the alleged onset date, a podiatrist diagnosed right ankle "mild" tenosynovitis, tendinosis, and osteoarthritis in 2013 (9F/23-24). The record also contains imaging studies from 2013 to 2016 that confirm he had abnormalities in his right ankle, including "small" osteochondral lesions, osteochondritis dissecans with osteochondral fracture, degenerative changes, "mild" tenosynovitis, tendinosis, "moderate" joint effusion, and "mild" arthrosis (Ex. 1F, 3F, 6F, 7F). This evidence is supportive of a severe right ankle condition. He also received conservative treatment that included steroid injections in his right ankle, a custom ankle brace in August 2016 (the claimant declined surgery at this time), and medications, such as prescription-strength ibuprofen, hydrocodone-APAP, gabapentin, and meloxicam. There is no evidence in the record that the claimant sought emergency room treatment for his right ankle problems regularly or consistently during the period at issue in this decision. In contrast to his testimony, the record does not confirm the allegation that a medical provider told him he must elevate his right lower extremity above heart level or as much as he could, or that he experienced medication side effects that could not be adequately managed by medication changes or dosage adjustments.

PageID.2170.

   The ALJ's decision is supported by substantial evidence. Plaintiff cites four instances during the relevant time period in which doctors told him to elevate his foot: May 2014; March 2015; April 2015; and July 2016. Plaintiff's Brief at PageID.4694.[4] Defendant points out that the references to restrictions in 2015 followed plaintiff's ankle surgeries on March 6, 2015 (PageID.1070-1071) and April 24, 2015 (PageID.1048). In addition, an emergency room discharge

---

[4] Plaintiff's reference to a July 2016 record does not appear at the cited page (PageID.3995). Plaintiff also refers to medical advice to elevate the foot in 2017 and 2018. *See* Plaintiff's Brief at PageID.4694-4695. Evidence from 2017 and 2018 is not relevant to this claim, which involves plaintiff's condition through his date last insured of December 31, 2016. "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Social Security Administration*, 88 Fed. Appx. 841, 845 (6th Cir. 2004).

note from May 10, 2014 advised plaintiff to "use ankle brace vet currently has as needed, ice as needed and elevate as needed for swelling" (PageID.1158-1160). While medical providers periodically advised plaintiff to elevate his ankle, there is no evidence that they advised plaintiff to elevate his ankle to the extent he testified. Accordingly, this claim of error is denied.

### C. Whether the ALJ made a harmful error by failing to give controlling weight to the treating psychologist's opinion?

Plaintiff contends that the ALJ erred by failing to give good reasons for assigning little weight to the opinion of a Veterans Administration psychologist, Dr. Fray. Plaintiff's Brief at PageID.4695-4697. The ALJ addressed this opinion as follows:

> Little weight is also given to the April 2017 opinion of Dr. Fray, a psychologist at the VA, that the claimant's mental impairments caused occupational and social impairment with reduced reliability and productivity (Ex. 8F/113). This opinion does not contain specific limitations of function. It is also not inconsistent with a finding that the claimant has only mild limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing himself, as Dr. Fray did not state that the claimant was moderately, markedly or extremely limited in any areas of mental functioning.

PageID.2165. The ALJ articulated good reasons for assigning little weight to Dr. Fray's opinion.[5] Accordingly, this claim of error is denied.

### IV.    CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated:  October 16, 2024                                  /s/ Ray Kent
                                                          RAY KENT
                                                          United States Magistrate Judge

---

[5] In this regard, defendant also points out that "Dr. Fray examined Plaintiff after the expiration of his insured status, and she did not indicate that her findings related back to the relevant period." Defendant's Brief (ECF No. 13, PageID.4710).

13